Good morning. We are pleased to court Gregory Karasik for Apprentice Don Tyrone Robinson. I would just like to make a few brief points this morning. And the first is that the recent case of Gutierrez v. Wells Fargo Bank, which the parties referred to in their 28J letters, we believe strongly supports our position that the term's disclosure requirements refer only to laws that dictate the content or form of information statements. And I would point to one specific passage in the Gutierrez decision at 704 F. 3rd, 727, where the court recognized where it says, nor does the unfair competition law mandate the content of any non-misleading and non-fraudulent statements in the banking arena. And that same proposition holds true with respect not just to UCL, but also the CLRA and the common law fraud doctrine under which Bank of America was sued on this case. As the court on that same page went on to say, on the flip side, the National Bank Act and other UCC provisions do not aid Wells Fargo as neither source regulates deceptive statements. And that's what we have here. We have laws that only prohibit or impose liability for deceptive statements, but they do not tell the bank what it has to say. Right. But isn't the fundamental basis of your claim a failure to disclose? That is part of it, Your Honor. It is a failure to disclose coupled with an affirmative misrepresentation. What was the affirmative misrepresentation? The affirmative misrepresentation was they told customers that you could not go to the bank to get service on your cash-paid accounts. And what do you base that on? There's a written document. Right, but I don't see where that statement is included in that written document, which you attach your complaint, and I've read it. There is a statement there, and you quoted it. Right, but I don't think it says exactly what you say it says. Can you find it? I can't find it, sir. It says... But where are you? Well, I'm looking at page 58 on the record, excerpts of record, which is paragraph 17 of the complaint. Paragraph 17 of the complaint? Let's look at the actual document. It's Exhibit 5 to the complaint. Okay, so... And on page 95 of the excerpts of records. I'm there. Doesn't this document elsewhere say that you can do exactly that? You know, service and withdrawals are two different things. I think the document says that you can make withdrawals. I did not see that in this document, but I think that's a question of fact as to what service means. Certainly, the word service can be interpreted going to the bank for one of the services you provide is they give you your money. That's a withdrawal. That's customer service. The second point I wanted to make was also with respect to the... Do I understand? Your allegation of affirmative misrepresentation is that it was told in a document that he could not withdraw money from a branch. Correct. Okay. I just want to clarify. Now, the other point that I would like to make this morning from the Gutierrez case is that Gutierrez makes clear that the burden is on the defendant to show when you're seeking to enforce laws of general applicability like the laws we were seeking to enforce. In this case, they have to show significant interference with the ability of the bank to conduct its banking business. And we submit in this case that Bank of America has made no such showing. And, in fact, we submit it's just like the Wells Fargo case where the court said at 704 F3rd 727, Wells Fargo does not articulate how abiding by the unfair competitions law prohibition of misleading statements would prevent or significantly interfere with its ability to engage in the business of banking. And that is the same case here. There's nothing about having to tell the truth that interferes with a bank's ability to go about taking deposits. And unless there's any further questions from the court, I'll reserve the balance of my time. I just have one question. It may not be relevant at all, but does the choice of law clause affect this case at all? I think it said some agreements that North Carolina law would govern. Does that affect the outcome? That issue has not been raised. The only issue is whether it was preempted. They didn't argue. The bank did not argue that the California law did not apply. They argued under California law we had not stated a cause of action. The district court did not address that issue. The district court only relied on the preemption issues. So that is not an issue as far as we're concerned. Do we know whether North Carolina has different laws than the kind of consumer protection laws that California has? I don't know specifically, Your Honor. Most states have common laws, certainly against fraud for saying misleading half-truths. But I do not know specifically what North Carolina law is. All right. Thank you. Good morning. May it please the Court, my name is Adam Carr and I represent Defendant Bank of America, N.A., the appellee in this matter. I asked the Court, at least at the outset, to just sort of step back for a second and think about the allegations, the particular allegations in this case. Mr. Robinson agreed to pay a $1.50 fee that his undisputed Bank of America had the authority to charge to Mr. Robinson. Can I just get a clarification? He says the affirmative misrepresentation is you couldn't get servicing at the banks. But the affirmative, but he means that he couldn't get cash withdrawals from branches. He could get cash withdrawals from banks. And these are cards bearing a visa symbol? They are. So the agreement says he can get cash at our offices. Correct. So I direct your attention to page 81 of the record where it states, and this is a document that was attached to the complaint as it exhibits, obtaining cash, offices of financial institutions that accept visa cards, including our offices, referring to Bank of America, will accept your card for obtaining cash. These cash transactions are subject to cash access fee stated in the fee schedule. So that's the provision that directs that an individual can go into a bank branch and get cash. The section that I have two questions about that. One, did all the cash pay cards have a visa symbol? My understanding is that some of them did not, but all of the ones that are at issue in this lawsuit, including the one that Mr. Robinson had, did bear a visa symbol. And my second question is, is it misleading to have in one document that you can withdraw cash, but then in another document saying that all services must be done over the telephone by calling this particular number? Well, I think there's a distinction between drawing cash and services. There's a number of enumerated services that are listed, I believe, on page 95 of the record. And that document identifies what those things are, card activation, PIN selection, checking account balances. All of those things are various services that a bank can use. But could a reasonable consumer be confused about that? I don't believe so. I think looking at these documents, you'd be hard-pressed to be confused about that issue. Well, is it a question of fact whether a reasonable consumer could be confused about that or misled by those statements, separate statements? Well, no, I don't. I mean, I think when a document is clear on its face, it absolutely is not. And I don't think there's any ambiguity in these agreements that Mr. Robinson attached to his complaint. Fundamentally, this case is about a failure to disclose. If you review the complaint, the very first paragraph of the complaint, this class action lawsuit arises out of the failure of Defendant Bank of America to disclose that account maintenance fees charged to consumers who have a cash pay account with Defendant can be avoided by going to a branch location and withdrawing funds. Throughout the complaint, all that's said over and over and over again is this failure to disclose the fact that an individual could go to a bank branch, notwithstanding the contract or the agreement that exists, and withdraw cash. What Mr. Robinson is asking courts to do is essentially impose an affirmative obligation on Bank of America to make certain types of disclosures. And this is exactly the type of thing that is preempted by the National Bank Act. Mr. Karasik cited Gutierrez. Gutierrez is quite clear. To quote Gutierrez, imposing liability for failure to sufficiently disclose its posting method leads to the same result as mandating specific disclosures. What Mr. Robinson is asking Bank of America to do is make specific additional disclosures beyond those that it made in connection with it. It is on its face no different than if California passed a law that says if you disclose how much a fee is, you must in every single circumstance identify any conceivable way in which you will not charge that fee. And I think that would very clearly be preempted under the jurisprudence. I think that would very clearly be preempted, but why isn't the statement that you will be charged $1.50 maintenance fee not affirmatively misleading when there is a very precise circumstance in which he would not be charged the fee? Well, actually, let's go back to the document itself, because what it doesn't say is you will be charged a fee. What it says is you agree to pay a fee. And what Bank of America did in this particular circumstance, or did in some circumstances, was choose to waive that fee that it charged to consumers. There's nothing misrepresented on the face of the document. The fact that Mr. Robinson agreed to pay a fee and the fact that Bank of America chose not to charge it, there's nothing inconsistent or deceiving about that. I mean, taken to its logical extreme, let's say you had a company that made the decision that debts of under $1,000, they're not going to take any action to collect. If you were to have a circumstance like that and if you had a disclosure that says we're going to collect all debts, presumably companies could be getting sued just because they didn't take somebody to court over de minimis debts because they didn't adequately disclose them. And that just can't be the law. So the district court properly held that this disclosure that Mr. Robinson is seeking to have Bank of America make was preempted by the National Bank Act. I mean, the National Bank Act provides that banks have the authority to engage in the business of banking and gives the banks the authority to carry out those deposit-taking powers without regard to state limits or state law limitations related to disclosures. And as I noted before, Gutierrez supports this position, very recent decision, makes clear that compelling certain or challenging disclosures is insufficient is no different than compelling certain types of disclosures. And the fact that these are laws of general application is completely irrelevant to that analysis. It's been made quite clear in the Martinez decision, the Gutierrez decision, that you can look at laws like the unfair competition law and that at the end of the day you look at the application of those laws under the particular facts. We don't dispute that there are circumstances in which claims under the CLRA or claims under the UCL would not be preempted by the National Bank Act. But when you look at the facts of this case and look at what he's seeking, what Mr. Robinson is seeking to do, which is to compel Bank of America to make specific types of disclosures, that is exactly the thing that is covered by National Bank Act preemption. I assume that you didn't make any argument about North Carolina law because if North Carolina has similar laws, you would be making the same basic argument about preemption anyway. Well, without going to any decision we made behind the scenes, I will say we did not raise that in the trial court. Right. But, I mean, had it been brought in North Carolina, or had North Carolina been applied, you would have made the same preemption argument. Absolutely. The same preemption argument would apply in any jurisdiction. Moving on from the issue of preemption, unless there are any additional questions, I wanted to just briefly state that the merits of this claim under California law are not novel and are not new. There is a decision that we cited in our briefing, the Ballar case, it is quite frankly dispositive of the claim that's being made by Mr. Robinson. The Ballar case involved discounts that were applied, undisclosed discounts that were given to certain consumers. There was a lawsuit brought under the CLRA and the UCL, and the court determined that under those circumstances there could be no violation of law. Certainly consumers are not being harmed by some individuals receiving a benefit beyond that which they contractually agree. And if there are no questions? Do they have questions? No? Okay. Thank you. Thank you very much. The failure to disclose in this case was not the failure to disclose about the ability to go to the bank. The court has recognized that that is in one document, but that is inconsistent with what is said in another document. So it is misleading. I don't understand. What are you saying? It's inconsistent? He said there's services and you agree to pay, you go to certain numbers for services, and you can take money out of the bank. Those things are all said, and how are they inconsistent? They're in two different documents, Your Honor, and I think a reasonable consumer would not be making that distinction and wording the word services so narrowly as to exclude going to the bank and getting money. I think a reasonable consumer would think that's what services means. And you've got one document, which is a very technical agreement, and then you've got FAQs, which the public go to when they have questions, and it's the FAQ document that says you can't get any services at the bank. So we argue that that's an affirmative misrepresentation. Now, whether it is or isn't, that's a question of fact. We're not here to discuss the merits of whether that's really true or not, but we certainly allege that that's an affirmative misrepresentation. And this was a dismissal on the pleadings, right? This was a motion for judgment on the pleadings where the court had to assume allegations were true. Of course, the courts did not get to the merits under California law because the court ruled on preemption grounds. Now, contrary to what defense counsel is arguing, we are not asking the bank to make specific disclosure. None of the laws dictate a specific disclosure. We are only seeking to hold the bank liable for misleading statements. And in Gutierrez, this court said you can do that under California law because there's a difference between compelling a bank to make a statement, which we're not seeking to do, and they were trying to do that in Wells Fargo. In Wells Fargo, they wanted an injunction requiring the bank to specify their posting methodology. The court said you can't do that, but you can hold them liable for making misleading statements. And here there's a misleading statement about being able to avoid the $1.50 charge. Did the parties enter into an agreement to have this heard in the first instance by the magistrate judge? I believe it was referred to the magistrate by the district court. So both parties consented to that? I don't know if we had a choice because we had the opportunity to ask the district court to review the magistrate's opinion. So we did not agree that the magistrate's ruling would be conclusive. We exercised our right to object to the magistrate's report, and the district court, in what we would suggest a pro forma matter, just rubber-stamped the magistrate judge's analysis. And the last point I would like to make is that the Buller case that the defense relies on with respect to the merits of the California law is not dispositive because in that case, the plaintiffs did not even allege that there was a duty to disclose. Here we have alleged a duty to disclose. Here we have alleged factual basis for under California law imposing a duty to disclose. But the duty to disclose are covered. Wait just a second. As soon as you say based on a duty to disclose and a failure to disclose, you're back into preemption. You've got to base it on misrepresentation, don't you? Well, it's a combination, Your Honor, but the duty to disclose is not a duty to disclose anything specific about the content. The duty to disclose is really the duty to avoid misleading statements. You have to say enough so that you can't say a half-truth. If you say a half-truth, you're obligated to say the whole truth. That's what the law is. It doesn't say anything about what you have to say as a bank. It doesn't say what words you have to use. It doesn't say what font size you have to use. You want them to say, you may go to the branch at the end of the month and take all your money out, and in those cases, we probably won't try to collect a fee from you by filing suit against you because there's not enough money left in the bank. You want them to say that. We're not asking them to say anything. We're asking them not to lie and not to say things that we argue induce people to take action or refrain from action based on those statements to their detriment by being charged fees that the bank would not charge them if the bank told them the truth. And the OCC regs do not preempt laws regarding disclosure. They preempt laws regarding disclosure requirements. And that word is very important because it's different than some of the other OCC regs that don't have that word requirements. And the word requirements means a law that dictates a content or the form of a disclosure, and that is not the case here. All right. Thank you, counsel. We've exceeded your time. Robinson v. Bank of America is submitted.
judges: Restani, Wardlaw, Murguia